## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY RODRIGUEZ,

                **Petitioner,**

vs.                              **Case No. 10–cv–0077–DRH–SCW**

RICHARD BIRKEY,

                **Respondent.**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.      Introduction

In 1997, a jury in Randolph County, Illinois, convicted petitioner Anthony Rodriguez of two counts of predatory criminal sexual assault of an eleven-year-old child. In February 2010, Rodriguez—who is currently serving his sentence at Illinois River Correctional Center—filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In August 2010, this case was consolidated with a separate federal habeas petition (No. 10–cv–0231–JPG). Before the Court, then, are two separate pleadings (Doc. 1 and Doc. 7), with certain clerical corrections in a motion to amend (Doc. 9), that have been construed as one petition.

In light of the Court's obligation to give a liberal construction to *pro se* pleadings, the petition (which Rodriguez separated into four grounds for relief) is organized into the following seven claims:

1. The Illinois postconviction trial court erred in denying Rodriguez's motion for discovery of his victim's medical history;

2. Rodriguez's counsel at his criminal trial was ineffective in failing to investigate his victim's medical history;

3. Rodriguez's constitutional rights were violated when the trial judge instructed the jury that Rodriguez "denies the truth;"

4. Witnesses at Rodriguez's criminal trial made contradictory statements;

5. Results from inconclusive blood tests were withheld from Rodriguez;

6. Trial counsel was ineffective for:

   a. Refusing to confer with Rodriguez about his case;
   b. Failing generally to investigate the case properly;
   c. Suppressing evidence from the jury;
   d. Divulging damaging information to the jury; and

7. Rodriguez was denied the right to present relevant and exculpatory evidence that his victim's mother was lying when she said (in a report) that she and Rodriguez had never had sex.

A response is on file, with supporting exhibits (Doc. 20 and Doc. 21), and Rodriguez has filed his reply (Doc. 27).   For the following reasons, petitioner Anthony Rodriguez's Petition for Habeas Corpus (Doc. 1 and Doc. 7) is **DENIED.**

## II.   <u>Factual & Procedural Background</u>

The facts determined by a state court are presumed to be correct in the absence of clear and convincing evidence to the contrary.   **28 U.S.C. § 2254(e);** ***Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).**   The following factual background relating to the instant petition has been taken from the Rule 23 unpublished direct appeal decision on Petitioner's case rendered by the Illinois

Fifth District Appellate Court on February 4, 2000 (Case No. 5-97-1044) (Doc. 21-1); from the appellate court's Rule 23 order rendered on September 14, 2001 (Case No. 5-00-0599) (Doc. 21-7); from the appellate court's Rule 23 Order of July 9, 2004, reversing the postconviction trial court's denial of Rodriguez's motion for postconviction discovery and remanding for the same (Case No. 5-02-0277) (Doc. 21-20); and from the Rule 23 order from August 11, 2008, affirming the denial of Rodriguez's petition for postconviction relief (Case No. 5-06-0657) (Doc. 21-29).

### A. Jury Trial & Sentencing

Petitioner stood trial on two counts of predatory criminal sexual assault of a child. The charges stemmed from an 11-year-old girl's allegation that the 46-year-old petitioner twice anally penetrated her while she was in his care. A jury found Petitioner guilty of both offenses.

During the trial, Petitioner's victim testified that, while her mother was out of town on May 9 and 10, 1997, she was in Petitioner's care in the Chester, Illinois home shared by petitioner and her mother. On the night of May 9th, she went to sleep in her mother's bed and was awakened by petitioner's presence in the bed. She further testified that he then anally penetrated her with his penis. The next night, the victim went to sleep in her own bed. She stated that petitioner again anally penetrated her with his penis.

Defense counsel explored the possibility of past sexual abuse sustained by the victim. During cross-examination, the victim's mother denied

the existence of prior sexual abuse.   Later, counsel asked Dr. St. Germain whether she noted anything uncommon about the child's medical history.   St. Germain recollected an uncertain form of abuse at approximately age two based on a verbal review with the nurse handling the case, as well as a penetrating vaginal injury caused by a previous speculum examination.   Defense counsel argued to the jury that the victim "had problems apparently for many, many years."

But the victim's testimony was corroborated by an investigator at the Illinois Department of Child and Family Services and by Dr. Deanna St. Germain, a child-sexual-abuse expert.   The investigator testified that his May 21, 1997 interview with the victim reflected the same account described by her trial testimony.   Dr. St. Germain confirmed that her examination of the victim revealed that she had suffered an abnormal penetrating injury to her anus.   St. Germain went on to testify that, with regard to physical evidence of anal penetration, she could not separate an occurrence that happened in May 1997 from a previous occurrence.

At closing, the prosecution argued that petitioner—who at some point after he anally penetrated the victim, did a load of laundry—was washing clothes to get rid of evidence.   Defense counsel referenced unpresented evidence of semen stains (the subject of inconclusive DNA testing) found on a blanket from the child's bed in arguing against the prosecution's position:

> Your honor, one thing, and I am sure the counsel did not
> do this intentionally, but I would strongly object to his

4

argument about washing the clothes, getting rid of evidence.  There was no evidence whatsoever as to the reason for washing those clothes and getting rid of evidence.  In fact, counsel knows that there was sperm on various items that was not presented.

Petitioner was sentenced to consecutive terms totaling sixty years of imprisonment.

## B. Direct Appeal

On direct appeal, petitioner argued that his right to a fair trial was violated by the State's improper closing argument, that his counsel was ineffective in divulging the damaging information (that there was sperm on various items) in front of the jury, and whether the consecutive sentences were improperly imposed.  (Doc. 21-2).  The appellate court remanded on the consecutive sentence issue,[1] but affirmed on the ineffective assistance and fair trial claims.  As it pertained to the ineffective assistance claim, the court reasoned:

> "The [*Strickland*] prejudice prong precludes relief based solely on an attorney's substandard performance . . . Our task is to measure an inferior performance against its potential effect on trial's outcome.  Therefore, even when counsel's mistakes are egregious, we are required to examine them in the context of all the cases's evidence.
>
> As previously noted, the evidence of defendant's guilt *was not close*.  (Emphasis added).  Furthermore, immediately after defense counsel's remark, the circuit court reiterated that the jury was instructed to disregard closing-argument comments not based on the evidence presented.  Based upon the proceedings in their entirety, we are satisfied that the jury's verdict is

---

[1] On the consecutive-sentence issue, the trial court (on remand) again sentenced Petitioner to 60 years of consecutive sentencing, a decision that was later affirmed by the appellate court.

> reliable and that the deficient performance did not produce unjust results. Simply put, a different outcome absent counsel's comments is not a reasonable probability. (Doc. 21-1, 6–7) (internal citations and quotations omitted).

Petitioner took the issue (in the form of an argument that the information divulged by his trial counsel precluded him from having a fair trial) to the Illinois Supreme Court. That court denied his Petition for Leave to Appeal (PLA). (Doc. F).

### C. Petition for State Postconviction Relief

Petitioner filed a *pro se* petition for postconviction relief (PCR) in November 2000. He raised four issues: bias by the trial judge, perjury by State witnesses, suppression of favorable DNA evidence, and ineffective assistance of trial counsel (for which he enumerated six separate reasons). But in December 2001, through counsel, petitioner filed an amended PCR petition, winnowing his claims to three: that his extended-term sentence violated *Apprendi v. New Jersey*, 530 U.S. 46 (2000); that the State failed to disclose evidence favorable to him; and that trial counsel was ineffective for making a prejudicial closing argument and failure to investigate information and witnesses provided by petitioner that would have bolstered petitioner's case and cast doubt on State witness testimony. Through counsel, Petitioner filed a motion to direct the State to produce his victim's medical records.

In 2002, the PCR trial court denied the motion for production of discovery, and denied the amended PCR petition in its entirety.

### D. Appeal of Postconviction Decisions

Petitioner appealed the denial of his PCR petition, arguing that the trial court had erred in denying his motion for discovery, and that the trial court erred in denying his claim that trial counsel was ineffective for failing to investigate his victim's medical history. The appellate court agreed:

> Without viewing the medical history referred to during the trial, trial counsel was unable to determine whether the evidence of prior molestation was inadmissible evidence pursuant to the rape shield statute . . . or admissible evidence supporting the defense. The defendant's request for postconviction relief occurred within five years of his conviction, and the defendant claims that [his victim's] medical records involve a limited set of documents to which the Department of Children and Family Services or the State has access. The defendant concedes in his brief that if [his victim's] medical records do not reveal evidence of prior anal penetration, his postconviction claim fails. The defendant showed good cause to discover [the] medical records, and we reverse the circuit court's decision finding otherwise.
>
> By extension, without discovery [the] medical history, indicating the type of prior sexual abuse . . . suffered at age two, the circuit court could not properly determine whether trial counsel's failure to investigate [the] medical history was unreasonable and prejudiced the defendant … Accordingly, we reverse the circuit court's orders denying the defendant's requests for [his victim's] medical records and the defendant's petition for postconviction relief and remand the cause to the circuit court for further proceedings consistent with this decision. (Doc. 21-20, 4–5).

### E. PCR Proceedings on Remand

On remand, the circuit court ordered the State to furnish petitioner's counsel with a copy of the medical records. Two state affiants confirmed that

sixteen pages of medical records—which were divulged to trial counsel in August 1997—constituted all the medical evidence concerning the victim available to the State.   The State then moved to dismiss Petitioner's PCR petition, and in December 2006, the motion was granted.  Petitioner appealed again.

### F.  Final PCR Appeal

Petitioner's final appeal to the Illinois appellate court took aim at the trial court's dismissal, arguing (in his response to his appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987)) that the trial court had erred by dismissing his PCR petition without first allowing PCR counsel to further investigate the medical records (petitioner had asked for a continuance), and that his underlying claim for trial counsel ineffectiveness should be granted.  As it pertained to the issue of trial counsel effectiveness, the appellate court concluded:

> [Petitioner] introduced no evidence that the State possessed any medical records other than those it had already produced.  Consequently, the trial court correctly found that the State had complied with its discovery order.  Without the medical record relating to the prior incident of abuse, the circuit court had no way of determining whether the information contained therein would be admissible evidence, and therefore the court had no basis upon which it could have determined whether trial counsel's performance was deficient or whether [Petitioner] was prejudiced by the alleged deficiency. (Doc. 21-29, 5).

As to the issue of the PCR trial court's denial of a continuance to obtain the victim's medical records from another source, the appellate court likewise affirmed:

> The decision of whether to grant a continuance is addressed to the sound discretion of the trial court. In the present case, the State's motion to dismiss [Petitioner's PCR] petition, wherein it argued that it had already given [him] all of [the] medical records in its possession, was filed on February 7, 2006. The hearing on the State's motion was not held until December 13, 2006. Thus, after learning that the State claimed not to have the records he sought, [Petitioner] had more than 11 months in which he could have contacted [his victim, his victim's mother], or Dr. St. Germain in order to obtain them. Under these circumstances, the circuit court did not abuse its discretion in declining to grant [him] a continuance. (Doc. 21-29, 5–6).

Petitioner's PLA from the appellate court's decision was denied.

In February 2010, petitioner—who is currently serving his sentence at Illinois River Correctional Center—filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In August 2010, this case was consolidated with petitioner's separate federal habeas petition (No. 10–cv–0231–JPG). Before the Court, then, are two separate pleadings (Doc. 1 and Doc. 7), with certain clerical corrections in a motion to amend (Doc. 9), that have been construed as one petition. The State filed its response on December 22, 2010 (Doc. 20), and the petition ripened with Petitioner's February 22, 2011 Reply (Doc. 27). Having thoroughly reviewed the record, the Court **DENIES** Anthony Rodriguez's petition for habeas corpus relief.

### III.   <u>Analysis</u>

Section 2254 permits federal courts to entertain an application for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment

9

of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a) (emphasis added).

But as a threshold matter, a habeas petition shall not be granted unless the applicant has exhausted his State court remedies.   28 U.S.C. § 2254(b)(1)(A). Inherent in a petitioner's obligation to exhaust his state court remedies is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).  Fair presentment requires the petitioner to assert his federal claim through one complete round of state-court review, *id.*, and contemplates that both the controlling legal principles and the operative facts must be submitted to the state courts, *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001).  Determining whether a petitioner fairly presented his claims requires examining the arguments in his state appellate briefs. *See Malone v. Walls*, 538 F.3d 744, 753–54 (7th Cir. 2008) (citing *Dye v. Hofbauer*, 546 U.S. 1, 3–4 (2005)).

Closely related to the exhaustion doctrine is the doctrine of procedural default.   *Perrequet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). When a habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court, and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim. *Id.* The doctrine of procedural default is subject to two equitable exceptions: a procedural default will bar a federal court from granting habeas relief unless (1)

the petitioner demonstrates cause for the default and prejudice resulting therefrom, or (2) he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits. *Badelle v. Correll*, 452 F.3d 648, 661 (7th Cir. 2006); *Perrequet*, 390 F.3d at 514.

### A. Rodriguez's Procedurally Defaulted Claims

The Court has thoroughly examined petitioner's briefs from his direct appeal (Docs. 21-2 and 21-4), his PLA on direct appeal (Doc. 21-5), his direct appeal of his sentence on remand (Doc. 21-8), his PLA from that appeal (Doc. 21-10), his PCR petition (Doc. 21-12) and Amended PCR petition (Doc. 21-13), his appeal and reply brief from the denial of his PCR petition (Doc. 21-17 and 21-19), his reply to the state's motion to dismiss his remanded PCR petition (Doc. 21-25), his response to his PCR appellate defender's *Finley* motion (Doc. 21-28), his PLA from his PCR appeal (Doc. 21-30), his motion to file a late PLA (Doc. 21-32), and his pro se petition for relief from judgment and response to the state's motion to dismiss (Doc. 21-36 and 21-38).   Comparing those documents to the instant habeas petition, and mindful that it is proper to make a generous interpretation of a habeas petitioner's state court filings in considering default, *Lewis v. Sternes*, 390 F.3d 1019, 1027 (7th Cir. 2004), the undersigned concludes that, by failing to present them through a complete round of state court review, petitioner has procedurally defaulted several of his claims for relief here.

Rodriguez has procedurally defaulted Claim 3, his assertion that his constitutional rights were violated when his trial judge, while instructing the jury,

said that petitioner "denies the truth."   Petitioner did complain about his trial judge's bias (though not any instruction given by the judge to the jury) in his first PCR petition (Doc. 21-12, 2), but petitioner submitted an amended petition—one which superseded the original.   *See Boub v. Township of Wayne*, 702 N.E. 2d 535, 536 (Ill. 1998).   Further, petitioner never hinted at prejudice via the trial judge's statements in his amended PCR petition or any subsequent round of state appeal.   He did not, therefore, give Illinois courts an opportunity to rule on the instant Claim 3.

As to Claim 4, that witnesses at petitioner's trial made contradictory statements, the only time Petitioner raised the issue was in his first PCR petition, as an example of his trial counsel's purported ineffectiveness.   But once again, his argument was mooted when it was superseded by an amended petition (Doc. 21-13).   Rodriguez did not assert that testimonial inconsistencies were a constitutional violation in either his PCR appeal or PLA from the denial of that appeal.   And he did not raise the issue on direct appeal at all.   (Doc. 21-2, Doc. 21-5).   Claim 4 is procedurally defaulted.

As to Claim 5, that results from inconclusive blood tests were withheld from petitioner, the claim was raised in his PCR petition and petition for relief from judgment.   But petitioner did not raise in his PCR appeals (*see* Doc. 21-17, Doc. 21-28), and he never attempted to challenge the appellate court's affirmation of the denial of his petition for relief from judgment in the Illinois Supreme Court.   *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)

(Petitioner's "failure to present . . . his three federal habeas claims to the Illinois Supreme Court . . . resulted in a procedural default of those claims."). Claim 5 is procedurally defaulted.

Claims 6(a), 6(b), and 6(c) (various assertions as to why petitioner's trial counsel was ineffective), as well as Claim 7 (that he was denied his right to present evidence that his victim's mother lied when she claimed she and petitioner never had sex), have likewise been rendered procedurally defaulted. While petitioner pressed the issues (some of them only superficially) in his PCR petition, he failed to present any of the four in either of his PCR appeals or in his PLAs based on those appeals.

Although procedural default is not an absolute bar to habeas relief, *Eichwedel v. Chandler*, 696 F.3d 660, 669 (7th Cir. 2012), a federal court may consider a defaulted claim only if petitioner can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice, *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). Petitioner, in his reply, says that he "believed these claims along with others" were presented to his appellate counsel on direct appeal. That is not enough to show cause for the default, much less that he suffered "an error which so infected the entire trial that the resulting conviction violates due process." *See Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Indeed, petitioner makes no argument for either prejudice or a fundamental miscarriage of justice. The Court cannot excuse his defaulted claims. *See Crockett v. Hulick*, 542 F.3d 1183, 1193

(7th Cir. 2008) (Petitioner failed "to argue either [cause and prejudice or fundamental miscarriage of justice], and so we cannot consider his claim.").

### B. Rodriguez's Non-Defaulted Claims

The authority of federal courts to issue habeas corpus relief for persons in State custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 783 (2011). While § 2254 does not impose a complete bar on federal court relitigation of claims already rejected in state proceedings, the hurdle is a high one. *Id.* at 786. A court cannot grant a writ to a petitioner in State custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). *Accord Malone v. Walls*, 538 F.3d 744, 757 (7th Cir. 2008).

Under the "contrary to" clause, a writ may be issued only if the state court applied a rule that contradicts the governing law set forth by the Supreme Court or if the state court reached a different outcome based on facts materially indistinguishable from those previously before the Supreme Court. *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Under the "unreasonable application" clause, a federal

court may grant relief if the state court identifies the correct governing legal principle from Supreme Court precedent, but unreasonably extends it (or refuses to extend it to a new context where it should apply). *Resendez v. Smith*, 692 F.3d 623, 626 (7th Cir. 2012); *Morgan*, 662 F.3d at 797. And factual findings made by both the state trial court and the appellate court reviewing the trial record are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008).

On habeas review, a federal court should treat a state court's decision with "deference and latitude." *Harrington*, 131 S.Ct. at 785. The inquiry is not whether the state applied federal law incorrectly, but rather whether the state court applied federal law unreasonably. *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). A state court's determination that a claim lacks merit therefore precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Harrington*, 131 S.Ct. at 785 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Section 2254(d) does not require a state court to give reasons before its decision can be deemed "adjudicated on the merits." *Harrington*, 131 S.Ct. at 785. It may be presumed, when the state court has denied relief on a presented federal claim, that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id. See also Johnson v. Williams*, 133 S.Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must

presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."). When the presumption applies, courts must determine what arguments or theories could have supported the state court's decision. *Id.* at 786; *Eichwedel v. Chandler*, 696 F.3d 660, 672 (7th Cir. 2012). On a § 2254 petition, federal courts assess the decision of the last state court to rule on the merits of a prisoner's claim. *Franklin v. Sims*, 538 F.3d 661, 664 (7th Cir. 2008). If a claim was not adjudicated on the merits by a state court, federal courts must dispose of the matter as law and justice require. 28 U.S.C. § 2243; *Eichwedel*, 696 F.3d at 671.

Bearing in mind the deference and latitude afforded state courts, this Court now turns to Rodriguez's three remaining claims for relief.

### i. Claims 1 & 2

Petitioner's Claims 1 and 2 revolve around the medical history of his minor victim. At trial, Dr. Deanna St. Germain testified that she had examined petitioner's victim in July 1997. In Dr. St. Germain's opinion, the victim had suffered a penetrating injury to her anus. According to Dr. St. Germain, her nurse's review of the victim's medical history indicated that the victim had also been sexually abused (but as to how, Dr. St. Germain did not know) at age two. Dr. St. Germain testified that

> …with regard to the physical evidence of anal penetration to [the victim], she could not separate an occurrence that happened [in May 1997] from a previous occurrence. Dr. St. Germain stated: "When I do my examination, I am going to make

> an opinion of the physical findings and not of who
> did it when." (Doc. 21-20, 2).

Petitioner here makes two claims regarding his victim's medical history.  In Claim 1, he asserts that the Illinois PCR trial court erred in denying his motion for discovery of that medical history.  In Claim 2, he asserts that his criminal trial lawyer was ineffective in failing to investigate his victim's medical history.  Petitioner essentially argues that if his counsel had found then used his victim's medical history (which the PCR court should have allowed him time to procure) as evidence of prior anal penetration, he would not have been found guilty.

During his efforts to obtain state post-conviction relief, petitioner took the matter up.  After the trial court denied his motion for discovery of the medical records referenced by Dr. St. Germain's nurse, it found that his trial counsel was effective.  But on appeal, the state appellate court reversed: "Without viewing the medical history referred to during the trial, trial counsel was unable to determine whether the evidence of prior molestation was inadmissible evidence pursuant to the rape shield statute . . . or admissible evidence supporting the defense. … By extension, without discovering [the victim's] medical history, indicating the type of prior sexual abuse that [she] had suffered at age two, the circuit court could not properly determine whether trial counsel's failure to investigate [her] medical history was unreasonable and prejudiced the defendant," thus denying petitioner a fair hearing.

On remand, the circuit court ordered the State to furnish petitioner's counsel with a copy of his victim's medical records.  Arguing that it had already

provided to petitioner all the medical information in its possession, the State moved to dismiss.  The State introduced affidavits from a Child & Family Services administrator that only 16 pages (previously provided to petitioner's trial counsel) of the victim's medical records were in the State's control.  The State's Attorney at the time of the trial swore he gave those sixteen pages to petitioner's defense counsel prior to trial.

Petitioner's PCR counsel requested a chance to obtain the old records—the ones not in possession of the State or of defense counsel at the time of trial—from the victim or her mother, or from Dr. St. Germain.  But finding that the State had complied with the discovery order, the circuit court granted the State's motion to dismiss.  Petitioner appealed, arguing that that the circuit court did not comply with the appellate court's mandate, and that the circuit court abused its discretion in failing to grant petitioner a continuance to obtain the medical records in question from the victim, her mother, or from Dr. St. Germain.

The appellate court affirmed, reasoning that "[t]he circuit court clearly complied" with its mandate:

> [Petitioner] introduced no evidence that the State possessed any medical records other than those it had already produced.  Consequently, the trial court correctly found that the State had complied with its discovery order.  Without the medical record relating to the prior incident of abuse, the circuit court had no way of determining whether the information contained therein would be admissible evidence, and therefore the court had no basis upon which it could have determined whether trial counsel's performance was deficient or

> whether [Petitioner] was prejudiced by the alleged deficiency. (Doc. 21-29, 5).

As to petitioner's argument (in his response to his PCR appellate attorney's motion to withdraw) that he should have been granted a continuance to obtain the old medical records, the appellate court disagreed:

> The decision of whether to grant a continuance is addressed to the sound discretion of the trial court. In the present case, the State's motion to dismiss [Petitioner's PCR] petition, wherein it argued that it had already given [him] all of [the] medical records in its possession, was filed on February 7, 2006. The hearing on the State's motion was not held until December 13, 2006. Thus, after learning that the State claimed not to have the records he sought, [Petitioner] had more than 11 months in which he could have contacted [his victim, his victim's mother], or Dr. St. Germain in order to obtain them. Under these circumstances, the circuit court did not abuse its discretion in declining to grant [him] a continuance. (Doc. 21-29, 5–6).

The appellate court affirmed the PCR trial court's dismissal of Petitioner's remanded case. The Illinois Supreme Court denied Petitioner's PLA.

As to Claim One, that the PCR trial court (on remand) erred by dismissing his PCR petition before giving Petitioner an opportunity to discover more exculpatory medical records, the instant petition fails. The state appellate court found that the trial court had complied with its mandate to produce discovery related to petitioner's victim's medical history, and "errors in state collateral review cannot form the basis for federal habeas corpus relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). *See also Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012) ("[T]hat the state may have failed to

comply with its post-conviction procedures would not raise a cognizable federal habeas claim"); *Martin v. Evans*, 384 F.3d 848, 855 (7th Cir. 2004) ("The trial court's denial of a continuance . . . is a matter of state evidentiary law that does not provide a basis for federal habeas relief.").

And as to Claim Two, that petitioner's criminal trial counsel was ineffective in failing to investigate petitioner's victim's history of sexual abuse, this Court cannot conclude that the state court's *Strickland* analysis was an unreasonable application of controlling law, or resulted "in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." 28 U.S.C. § 2254(d) (emphasis added). When an ineffective assistance claim rests on an alleged failure to investigate, "[t]he focus of the inquiry into prejudice must be on what information would have been obtained from such an investigation and whether such information would have produced a different result. ... [S]peculation about what" may have been admitted cannot establish *Strickland*'s prejudice prong. *Cross v. O'Leary*, 896 F.2d 1099, 1100 (7th Cir. 1990). *See id.* (petitioner's burden to supply sufficiently precise information for establishing prejudice under *Strickland*); *Magee v. Smith*, 403 F. App'x 84, 86 (7th Cir. 2010) ("The prejudice prong requires something more than speculation . . ."). At best, what petitioner brings here is speculation about what a medical report would have shown. Petitioner has simply not provided "clear and convincing" evidence—or any new evidence whatsoever—to rebut the presumption that the State court factual determination

of either his guilt or his trial counsel's purported ineffectiveness was unreasonable. 28 U.S.C. § 2254(e). The Illinois courts' determination that there was no factual support for petitioner's *Strickland* claim was not objectively unreasonable.

Insofar as it is based on his assertions that he should have been granted a continuance so as to procure more evidence upon PCR review, or that his trial counsel was ineffective for failing to investigate medical records that have never been presented to this or any other Court, the instant petition is **DENIED**.

### ii. Claim 6(d)

Petitioner, in his final live claim, asserts that his trial counsel was ineffective for divulging damaging information to the jury. In his closing argument, petitioner's counsel referenced unpresented evidence of semen stains (the subject of inconclusive DNA testing)—references which the appellate court concluded were a counter to the prosecution's argument that defendant was laundering clothing to eliminate evidence:

> Your honor, one thing, and I am sure counsel did not do this intentionally, but I would strongly object to [prosecution's] argument about washing the clothes, getting rid of evidence. There was no evidence whatsoever as to the reason for washing those clothes and getting rid of evidence. *In fact, counsel knows that there was sperm on various items that was not presented.* (Emphasis in the appellate court's Rule 23 Order, Doc. 21-1, 6).

To be granted relief here for ineffective assistance, petitioner must establish that the state court's decision was contrary to clearly established federal

law, or that it involved an unreasonable application of such law, or that it was based on an unreasonable determination of the facts in light of the record before the state court. *Harrington*, 131 S.Ct. at 785. The controlling federal law on the Sixth Amendment right to effective counsel is articulated in *Strickland v. Washington*. Under *Strickland* and its progeny, demonstrating ineffective assistance requires a two-part showing: first that counsel's performance was deficient, and secondly that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See also Harrington*, 131 S.Ct. at 789 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal citations and quotation marks omitted).

Here, the state court used *Strickland* to analyze petitioner's claims of ineffective assistance of counsel. On direct appeal, the court concluded that defense counsel's comment "was clearly substandard because, without explanation, it permits an inference that more physical evidence supporting defendant's guilt exists." (Doc. 21-1, 6). But the court continued

> "The [*Strickland*] prejudice prong precludes relief based solely on an attorney's substandard performance . . . Our task is to measure an inferior performance against its potential effect on trial's outcome. Therefore, even when counsel's mistakes are egregious, we are required to examine them in the context of all the cases's evidence.
> As previously noted, the evidence of defendant's guilt *was not close*. (Emphasis added). Furthermore, immediately after defense counsel's remark, the circuit court reiterated that

22

> the jury was instructed to disregard closing-argument comments not based on the evidence presented. Based upon the proceedings in their entirety, we are satisfied that the jury's verdict is reliable and that the deficient performance did not produce unjust results. Simply put, a different outcome absent counsel's comments is not a reasonable probability. (Doc. 21-1, 6–7).

The state appellate court clearly relied on the correct Supreme Court precedent in its analysis, and this Court cannot conclude that its ruling was unreasonable. Rather, the state court's holding is a clear application of *Strickland* that accounted for myriad other facts in the case. Petitioner's minor victim testified about two instances of sexual assault, a state investigator corroborated her story, and a medical doctor testified about an abnormal penetrating injury to the victim's anus. Petitioner brings no clear and convincing evidence to rebut the state court's findings, so this Court must presume they are correct. *See Ben-Yisrayl*, 540 F.3d at 546. Given the deference due state court's decisions, it is impossible for this court to conclude that the state court's application of law or finding of fact was incorrect, much less that they were unreasonable. *See Harrington*, 131 S.Ct. at 785.

Insofar as his petition for habeas corpus is based on ineffective assistance of trial counsel for divulging damaging information to the jury (i.e. Claim 6(d)), Rodriguez's petition is **DENIED**.

## IV.    Certificate of Appealability

The district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. Rule 11(a), RULES

23

Governing Section 2254 Cases. A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the Court denies a petitioner's § 2254 petition on the merits and not merely for procedural reasons, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because a reasonable jurist may find the Court's decisions with respect to Petitioner's non-defaulted constitutional claims debatable, the Court grants a COA on Claim 1, Claim 2, and Claim 6(d) as described above. A COA is denied as to all other claims.

## V.    Conclusion

For the reasons discussed above, Petitioner Anthony Rodriguez's § 2254 Petition for Writ of Habeas Corpus (**Doc. 1 and Doc. 7**) is **DENIED**. The Court **DISMISSES with prejudice** Rodriguez's petition. The Court grants a certificate of appealability on Claim 1, Claim 2, and Claim 6(d) as described above. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

Digitally signed by
David R. Herndon
Date: 2013.03.22
09:24:59 -05'00'

**IT IS SO ORDERED.**

**DATE: March 22, 2013**

**Chief Judge**
**United States District Court**